Luke L. ROMERO

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

Civ. A. No. 88–1125.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Feb. 28, 1989.

John D. Thompson, Jr., Acadiana Legal Service Corp., Lafayette, La., for Luke L. Romero.

Richard E. Willis, Asst. U.S. Atty., Shreveport, La., for Secretary of HHS.

## JUDGMENT

SHAW, District Judge.

This matter was referred to United States Magistrate, Mildred E. Methvin, for her report and recommendation. After an independent review of the record in this case, the court concludes that the report and recommendation of the magistrate is correct and this court adopts the conclusions of the magistrate.

IT IS ORDERED, ADJUDGED AND DECREED that the Secretary's motion for summary judgment is denied and that Romero be granted benefits consistent with an onset date of June 15, 1986.

## REPORT AND RECOMMENDATION

MILDRED E. METHVIN, United States Magistrate.

This social security appeal was referred to me for the purpose of review, report and recommendation pursuant to this court's standing order of March 3, 1986.

## STANDARD OF REVIEW

This court's review is limited to whether the Secretary's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[The court may not] reweigh the evidence or try the issues de novo. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Deters v. Secretary*, 789 F.2d 1181, 1185 (5th Cir.1986). "Of course, no similar presumption of validity attaches to the Secretary's conclusions of law, including determinations of the proper standards to be applied in reviewing claims and the proper allocation of the burden of proof." *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. Unit A 1981); *see also Hampton v. Bowen*, 785 F.2d 1308, 1309 (5th Cir.1986); *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir.1983); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983).

## BACKGROUND

Luke Romero was born on August 17, 1957, completed the seventh grade, but is unable to read and write, and has worked in the past as a laborer on a boat (Tr. 34; 36). He filed applications for disability insurance benefits and supplemental security income (SSI) on April 4, 1986, alleging disability since June 15, 1985 due to a back injury and brain damage (Tr. 56–69). His applications were denied both initially and on reconsideration.

Following an administrative hearing on May 18, 1987, the ALJ issued a decision denying benefits on October 29, 1987 (Tr. 30–55; 8–24). The Appeals Council denied review on February 18, 1988, making the ALJ's decision the final decision of the Secretary from which plaintiff now appeals (Tr. 3).

The ALJ found as follows: Romero has a severe impairment consisting of mild mental retardation, but he does not have an Appendix 1 impairment; there are no exertional limitations; Romero's "subjective complaints of pain and discomfort are not supported by the objective medical evidence of record and are not credible;" despite his mild mental retardation, Romero "has the ability to understand, remember and carry out simple instructions, to sustain attention and attendance for reasonable periods of time (including a 40–hour work week), to cope with appropriate supervision, to relate

satisfactorily to co-workers, to tolerate ordinary work pressures and tensions, and to make acceptable judgments about work functions;" he has the residual mental capacity to function on a sustained basis in an ordinary work setting; Romero has the capacity to perform his past relevant work as a tractor driver; Romero was not under a "disability" as defined in the Social Security Act (Tr. 13–14).

### ISSUES PRESENTED

Plaintiff cites the following errors of the Secretary: 1) the ALJ erred in failing to find that Romero was disabled under the Listing of Impairments in § 12.05(C) related to mental retardation; and 2) the ALJ's finding that Romero could perform his past relevant work as a tractor operator is not supported by substantial evidence.

### FINDINGS AND CONCLUSIONS

East Louisiana State Hospital records dated December 9, 1977, show that Romero was diagnosed as having organic brain syndrome associated with mild mental retardation (Tr. 168). An examination on March 7, 1978, showed that although Romero was functioning in a mild mental retardation range, there were no overt signs of psychosis (Tr. 169). H.L. Buerger, staff psychologist, performed an evaluation on January 12, 1978. He diagnosed mild mental retardation and organic brain syndrome. There was no evidence of psychosis or character disorder (Tr. 174).

Teche Action Clinic medical records dated January 28, 1983, show that Romero was seen for a hernia and referred to Houma (Tr. 148). Romero states in his application that he was admitted to SLMC on December 10, 1984 for hernia surgery (Tr. 97).

Teche Action Clinic records dated November 14, 1985, show that Romero was seen for lower back pain (Tr. 149). Romero stated that he had slipped while working on a boat five months previously. He walked with a limp, but he had a good range of back motion. Diagnosis was "backache" (Tr. 149).

Dr. C.G. Whitley, a physician with the Family & Industrial Physicians, performed a pre-placement examination on September 2, 1986 (Tr. 159–161). Lumbar spine x-rays showed a slight narrowing of the L5–S1 interspace (Tr. 161). Dr. Whitley found Romero physically unfit for employment due to a Class V back with "extreme narrowing" of the L5–S1 interspace (Tr. 160).

Dr. Jeffery Fitter, an orthopedic specialist, examined Romero at the request of the Social Security Administration on May 21, 1986 (Tr. 151–152). Romero reported that he had slipped off a boat "a couple of months ago" and hurt his lower back, although he did not seek medical treatment at first. Romero was later laid off. He reported that his back pain recurs upon exertion. Dr. Fitter found that Romero walked with a normal gait, but had some hypermobility in the lumbar spine. There was no tenderness or muscle spasms, and there was full range of motion in the lower back. Straight leg raising and sensory tests were negative. X-rays of the lumbar spine showed a minimal diminution in the height of the L–5 disc space with no degenerative changes. Dr. Fitter diagnosed chronic lumbar strain. He stated:

> This patient presents with a history suggestive of a muscle or ligamentous strain of the low back. I do not see any indication ... which would lead me to believe that this condition will be permanent or will remain disabling for a very long period of time.

(Tr. 151).

Henry Lagarde, a psychologist, performed a psychological evaluation on July 16, 1986, at the request of the Social Security Administration (Tr. 154). Romero obtained a full-scale I.Q. of 60, with a verbal score of 61 and a performance score of 62 (Tr. 155). The Bender–Gestalt test indicated the possibility of some brain damage with "significant distortions and one rotation." Dr. Lagarde stated:

> Mr. Romero appears to be functioning in a mild mental retardation range of intellectual capability. Vocational impairment appears to be moderate. He

will require assistance in managing funds.
(Tr. 155).

A Teche Action Clinic medical report dated September 22, 1986 states that Romero is considered disabled due to lower back pain (Tr. 156).

Romero testified at the administrative hearing on May 18, 1987 that he dropped out of school in the seventh grade and is unable to read or do simple arithmetic (Tr. 34–35). His wife handles the money and does most of the driving (Tr. 35). He could not remember when he last worked, but he did recall working on boats for Diamond Services (Tr. 36). He stated that he slipped and hurt his back at work. His job duties included cleaning up, tying rope, and lifting heavy water pumps. The job required walking most of the twelve-hour shift (Tr. 37). He worked on the boat for about a year (Tr. 38).

He is able to sit for five or ten minutes before he must change positions (Tr. 38). He is unable to lift his two-year-old son. He spends his time fishing with his son while sitting in a chair (Tr. 39). He has a prescription for pain medicine, but can't afford to buy the medicine (Tr. 39). He visits friends, but does not attend church (Tr. 40). Watching T.V. makes him nervous (Tr. 41). He does no housework, but he does mow the lawn, though he must stop and rest (Tr. 41). Tylenol and a heating pad relieve the pain, but he is unable to sleep at night (Tr. 42). He attempted a job planting for one day, but he had to quit due to back pain (Tr. 44). He worked several months for Banda Boats, but stated that he "got ran off" for not showing up and tying ropes incorrectly (Tr. 45). He recalled arguing with the captain about correct procedures, then not returning to work. He drove a tractor for a sugar company for a few days, but was fired after running the tractor into a ditch (Tr. 45). He left after an argument with the boss (Tr. 46). He could not recall working for a few days for a contracting company. He felt that he would be unable to drive a tractor for fear of running it into a ditch (Tr. 46). Romero obtained his driver's license through an oral examination (Tr. 47). He recently applied for jobs but was not hired. He and his wife fuss and scream at each other all the time (Tr. 48).

Tammy Romero, Romero's wife, testified that he takes Tylenol for his pain, but that it doesn't help (Tr. 49). He is easily upset over small things and is sometimes depressed. He visits only his relatives (Tr. 50–51). Mrs. Romero recalled her husband cursing at his boss and quitting his job (Tr. 52). After domestic arguments, Romero cries and apologizes (Tr. 54).

The ALJ completed a Psychiatric Review Technique form assessing Romero's condition from June 15, 1985 to the date of decision on October 29, 1987 (Tr. 16–24). He found that Romero's mental retardation was a severe impairment which did not meet or equal a listed impairment (Tr. 16). He rated the severity of Romero's impairment under § 12.05(D) as "none" (Tr. 23).

*1. Listing of Impairments 12.05(C)*

Romero last met the disability insured status requirements on December 31, 1985. Consequently, he must show that he was disabled on or before that date. The evidence is uncontroverted that Romero's I.Q. is no higher than the mid–60's, which satisfies the first part of Listing 12.05(C), 20 C.F.R. Part 404, Appendix 1, which provides as follows:

> *12.05 Mental Retardation and Autism* ...
> The required level of severity for this disorder is met when the requirements of A.B.C. or D. are satsified.
>
> \*    \*    \*    \*    \*    \*
>
> C. A valid verbal, performance, or full scale I.Q. of 60–69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function;

The record establishes that Romero's I.Q. is in the lower to middle 60's. The remaining issue is whether Romero suffers from "a physical or other mental impairment imposing additional and significant work-related limitation of function," in satisfaction of requirement (C) under § 12.05.

Romero contends that he suffers from organic brain syndrome, back pain, and a prior hernia which, either singly or in combination, impose such limitations. The ALJ found that Romero's back impairment was not severe (Tr. 4).

Nor does claimant exhibit a physical or mental impairment in addition to his mental retardation that imposes significant work-related limitations upon him in addition to those evoked by the retardation. The back strain, arguably such an additional impairment, has long since resolved. Hence, the criteria of section 12.05(C) are not here met.

(Tr. 4). With regard to Romero's organic brain syndrome, the ALJ stated:

Medical evidence of record establishes that claimant suffers from mental retardation caused by organic brain syndrome.

(Tr. 4). Organic brain syndrome is a term which encompasses several psychotic or cognitive disorders caused by or associated with impaired cerebral tissue function.

[M]ental status testing should focus on attention, language function (fluency, comprehension, repetition, quality of language and speech output), memory (old, well-learned information, recent events, new information), and specific intellectual functions (reading, writing, mathematics, and copying of 2– and 3–dimensional figures).

"Neuropsychiatric Syndromes in Organic Cerebral Disease," *The Merck Manual,* p. 1302, 14th ed. (1982).

The Appendix 1 Listing of Impairments defines Organic Brain Disorders as follows:

12.02 Organic Mental Disorders:

Psychological or behaviorial abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.

A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or
2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); ...

AND

B. Resulting in at least two of the following:

. . . . .

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Ch. 111, Part 404, Subpart P, Appendix 1, § 12.02.

The SSA regulations do not define the "significant work-related limitation of function" required by § 12.05(C), and I am unable to find any Fifth Circuit decision interpreting this phrase. *See Pullen v. Bowen,* 820 F.2d 105, 109 (4th Cir.1987). Other circuits which have considered the question are in agreement that the impairment need not be disabling in itself:

If the plaintiff's physical impairment were required to be independently disabling, section 12.05(C) would be rendered meaningless. Therefore, something less than a preclusion from any substantial gainful employment must apply.

*Branham v. Heckler,* 775 F.2d 1271, 1273 (4th Cir.1985). *See also Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 (1st Cir.1985); *Cook v. Bowen,* 797 F.2d 687, 690 (8th Cir.1986); *Edwards v. Heckler,* 755 F.2d 1513, 1515 (11th Cir. 1985).

*Nieves* holds that where a claimant's impairment is found to be "severe" under step two of the Secretary's anlaysis, it automatically satisfies the "significant limitations" standard of § 12.05(C). 775 F.2d at 14. *Cook* holds that an illness or injury

imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal. 797 F.2d at 690.

Under either *Nieves* or *Cook*, the evidence clearly shows that Romero has a significant limitation in addition to his I.Q. scores.

The ALJ failed to distinguish organic brain syndrome as a separate mental disorder established by objective medical evidence of brain abnormalities. Romero's testimony established that both short-term and long-term memory is impaired. His work history demonstrates repeated episodes of deterioration of adaptive behaviors and his subsequent withdrawal from the situation. Although Romero need not meet the criteria under the listing in § 12.02 to be considered disabled under § 12.05, there is ample evidence in the record to support a finding that his organic brain disorder imposes additional significant work-related limitations. Romero therefore meets the requirements of the listed impairment in § 12.05(C). If a severe impairment is of the degree set forth in a listing, then a finding of disability is required.

The ALJ's failure to find that Romero's impairments meet or equal a listed impairment would mandate a remand to the Secretary. Remand is appropriate only upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning claimant's disability based on the record before the court." *Ferguson v. Schweiker*, 641 F.2d 243, 250, n. 8 (5th Cir.1981). I find the evidence sufficient to determine that Romero is disabled and entitled to benefits because his impairment meets or equals § 12.05(C).

It is therefore my recommendation that the Secretary's motion for summary judgment be denied and that Romero be granted benefits consistent with an onset date of June 15, 1986.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) days from receipt of this report and recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling. FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION CONTAINED IN THIS REPORT WITHIN TEN (10) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.