**Curless J. ESTELLE**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

**Civ. A. No. 87–0274.**

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Oct. 6, 1989.

John D. Thompson, Jr., Lafayette, La., for Curless J. Estelle.

Joseph S. Cage, Jr., U.S. Atty., Josette Cassier, Shreveport, La., for Secretary of Health and Human Services.

### JUDGMENT

SHAW, District Judge.

This matter was referred to United States Magistrate, Mildred E. Methvin, for her report and recommendation. After an independent review of the record in this case, the court concludes that the report and recommendation of the magistrate is correct and this court adopts the conclusions of the magistrate.

IT IS ORDERED, ADJUDGED AND DECREED that the Secretary's motion for summary judgment is denied and that Estelle be granted benefits consistent with an onset date of October 31, 1985.

### REPORT AND RECOMMENDATION

Sept. 15, 1989

MILDRED E. METHVIN, United States Magistrate.

This social security appeal was referred to me for the purpose of review, report and recommendation pursuant to this court's standing order of March 3, 1986.

## STANDARD OF REVIEW

■ This court's review is "limited to a determination that the Secretary's decision was supported by substantial evidence existing in the record as a whole and that no errors of law were made." *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

> * * * However, we may not reweigh the evidence in the record, nor try the issues *de novo,* nor substitute our judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision ...

*Johnson v. Bowen,* 864 F.2d 340 (5th Cir. 1988). *See also Fields v. Bowen,* 805 F.2d 1168, 1169 (5th Cir.1986); *Neal, supra,* 829 F.2d 528 at 530. Substantial evidence is more than a scintilla, but less than a preponderance, and is:

> ... such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

## BACKGROUND

Curless Estelle was born on September 24, 1955, has a seventh grade education, and has worked in the past as a welder's helper, cook, and part-time assistant manager for Burger Chef (Tr. 24–25). He filed applications for disability insurance benefits and supplemental security income (SSI) on November 6, 1985, alleging disability since October 31, 1985, due to epilepsy, poor vision in one eye, and shoulder pain (Tr. 37–40; 41–50). His applications were denied initially and on reconsideration. Following an administrative hearing on June 9, 1986, the ALJ issued a decision denying benefits on September 12, 1986 (Tr. 19–36; 7–15). The Appeals Council denied review on December 10, 1986, and on February 6, 1987, Estelle appealed the Secretary's decision to the United States District Court (Tr. 3–4).

On September 11, 1987, I granted the Secretary's request that this case be remanded for the purpose of obtaining examinations of plaintiff by an internal medicine specialist and an opthalmologist. A second administrative hearing was held on July 29, 1988 (Tr. 175–194). The ALJ issued a decision recommending that Estelle be denied benefits on August 23, 1988 (Tr. 162–167). On February 28, 1989, the Appeals Council adopted the ALJ's findings and conclusions, making the ALJ's decision the final decision of the Secretary from which plaintiff now appeals (Tr. 153).

The ALJ found as follows: Estelle has a full scale I.Q. of 67 and loss of vision in the right eye, but he does not have an Appendix 1 impairment; his "testimony was to some extent not credible;" he has the residual functional capacity to perform work-related activities except for work involving instructions and/or acute depth perception; his past relevant work as a janitor did not require the performance of work-related activities precluded by his limitations; his impairments do not prevent him from performing his past relevant work; and therefore, Estelle was not under a "disability" as defined in the Social Security Act.

## ISSUES PRESENTED

Plaintiff contends that the ALJ's finding that he failed to meet the requirements of § 12.05(B) of the Listing of Impairments is not based on substantial evidence.

## FINDINGS AND CONCLUSIONS

### 1. Administrative Record

Mrs. Leroy Savoie, Sr., Estelle's acquaintance for 30 years, submitted a statement on November 25, 1985 certifying that seven years ago she had witnessed Estelle having seizures (Tr. 132). She stated that he had not taken his medication for seven or eight years because he had had no further spells.

Dr. Harvey Cromwell, a psychologist, evaluated Estelle on December 13, 1985, at the request of the Social Security Administration (Tr. 141). Estelle complained of left

shoulder problems, limited vision, and seizures twice a month, for which he took no medication. He stated that he was nervous, depressed, and easily angered, but that he had never been hospitalized for emotional difficulties. He spent most of his time watching television or helping his sister around the house. He does not drive. He obtained a verbal score of 70, a performance score of 68, and a full scale I.Q. score of 67, which placed him within a mildly retarded intellectual range. He was able to write his first and last name in cursive and recognize number symbols. He could add and subtract and was competent to handle his own funds. Dr. Cromwell estimated Estelle's reading ability to be between the first and second grade level.

Dr. Ray Boyer examined Estelle at the request of the Social Security Administration on December 23, 1985 (Tr. 143). Estelle complained of left shoulder pain. He also related a history of grand mal epilepsy, for which he took Phenobarbital. His last seizure was when he was 18 years old. He presently complained of episodes of "blacking out" and weakness twice a month. He has worked as a cook, roustabout, and welder's helper. He was fired from his last job as a janitor because he could not go to work when he was not feeling well. His blood pressure was 180/90. Dr. Boyer diagnosed total lack of vision in the right eye, systolic hypertension, history of blacking out episodes, and probable tendonitis of the left shoulder (Tr. 144).

Dr. L.J. Dugas, a surgeon, submitted a statement on June 9, 1986 to verify that Estelle takes Tranxene three times per day for his nervous condition (Tr. 149).

Estelle testified at the administrative hearing on June 9, 1986 that he was in special education until the seventh grade and then he was transferred to a special education trade school (Tr. 24–25). He does not have a driver's license and does not drive. He worked as a cook and part-time assistant manager for Burger Chef. He spends his day bike riding, helping with the cooking and cleaning, and watching television (Tr. 26). He has pain in his left arm and shoulder which interferes with his sleeping (Tr. 27). He can walk three blocks and stand for 10 minutes, but has no trouble sitting (Tr. 28).

Glenn Hebert, a vocational expert, testified that Estelle had no work skills transferrable from his past medium to heavy unskilled and semi-skilled occupations to a new occupation (Tr. 32). He felt that Estelle had the ability to learn on the job due to his positive work history. Estelle was undergoing a vocational rehabilitation evaluation, but had not completed the testing.

Estelle submitted a list of medications on November 18, 1987, showing that he took Tranxene for a skin rash and Rufen for pain (Tr. 196).

Dr. Dugas completed a medical report on December 9, 1987 outlining Estelle's complaints, but it is indecipherable (Tr. 206).

Dr. Larry Baker, an opthalmologist, evaluated Estelle's vision at the request of the Social Security Administration on February 23, 1988 (Tr. 220). He stated:

Basically Mr. Estelle has one good eye. He will function all of his life as a monocular person. His left eye at the time of the examination appeared to be normal. He has 20/20 vision and there is no particular limitation in his field of vision in that eye ... There are no particular limitations on his work, however, he should avoid jobs that would be dangerous to his remaining good eye or use protective glasses at any time when he is hammering or using grinders, etc. in a machine shop. Additionally, he would have reduced depth perception which might limit his ability to do very precise jobs while requiring excellent depth perception. He would not qualify as a pilot and should avoid, I think, other jobs such as climbing to dangerous heights, operation of a dragline, or similar type occupations.

(Tr. 220).

Dr. Fred Webre, an orthopedic surgeon, examined Estelle on April 6, 1988, at the request of the Social Security Administration (Tr. 227). He complained of left shoulder pain, but not back pain. Evaluation

was normal and Dr. Webre stated that Estelle did not present with specific orthopedic problems at this time.

Dr. D.F. Gremillion, an internist, evaluated Estelle at the request of the Social Security Administration on June 6, 1988 (Tr. 237). Estelle complained of pain and weakness in his left shoulder and arm, and related that all of his life he experienced episodes of unconsciousness, convulsions, frothing at the mouth, biting the inside of his mouth and tongue, and somnolence after the seizures. He was told he had epilepsy and has an episode seven to eight times a month. He was taking Phenobarbital. Dr. Gremillion diagnosed internal strabismus of the right eye, impaired vision, right eye, and a history of epilepsy (Tr. 238).

Dr. Gremillion completed interrogatories propounded by the ALJ and found that Estelle's impairments did not limit his capacity to lift, carry, stand, or sit. Estelle can climb only occasionally due to his history of epilepsy. He is also restricted from working around heights and moving machinery. In Dr. Gremillion's opinion, Estelle had no impairment which might result in intermittent exacerbations despite medication (Tr. 246).

Estelle testified at the supplemental hearing on July 29, 1988 that eye problems caused headaches and prevented him from performing the full range of duties in his previous job (Tr. 179–180). He worked as a welder's helper for his uncle, but his uncle would not allow him to do tack welding for fear it would injure his eye (Tr. 181). He was fired from his janitorial job because he missed work often due to headaches (Tr. 182). His duties included sweeping and unloading (Tr. 182). He left his job as a cook because he missed too many days due to pain in his eyes (Tr. 183). He liked working and never quit a job, but he hadn't been able to keep a job (Tr. 184). Dr. Dugas told him that his headaches could be a form of mild seizure (Tr. 185). He lives alone and receives help from Social Services to pay his rent (Tr. 187). He was able to work at the co-op for as long as he did because no physical was required and his

uncle talked with his employer (Tr. 189). He missed three or four days a week, but his uncle covered for him (Tr. 190). He takes no medicine for his headaches because he can't afford it (Tr. 192). Estelle's work background shows that he worked as a welder's helper and janitor at Cajun Cooperative from 1979 till October, 1985 (Tr. 195).

## 2. Analysis

■ A person applying for disability or SSI benefits bears the initial burden of proving that he cannot return to his prior employment. *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987); *Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir.1986). Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is therefore not disabled. *Neal*, 829 F.2d at 530. In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)–(f) (1988):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis. *Lovelace v. Bowen*, 813

F.2d 55, 58 n. 15 (5th Cir.1987); *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir.1984).

In the present case, the ALJ found that although Estelle's I.Q. of 67 and loss of vision in the right eye might render Estelle "automatically disabled" under Appendix 1, such a finding would run counter to congressional intent that a person not receive benefits if he can still do his previous work. The ALJ found that despite Estelle's marginal I.Q., impaired vision and headaches, he could still do janitorial work, and consequently could not benefit from the Listing of Impairments contained in Appendix 1. The ALJ offers no authority for this position. In fact, it is clear that Estelle meets the Listings, and that under the Secretary's own regulations, Estelle is entitled to benefits.

### 3. Listing of Impairments

The evidence is uncontroverted that Estelle's I.Q. is in the upper 60's, which satisfies the first part of Listing 12.05(C), 20 C.F.R. Part 404, Appendix 1, which provides as follows:

*12.05 Mental Retardation and Autism* ...

The required level of severity for this disorder is met when the requirements of A. B. C. or D. are satisfied.

\*　　\*　　\*　　\*　　\*　　\*

C. A valid verbal, performance, or full scale I.Q. of 60–69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function;

The remaining issue is whether Estelle suffers from "a physical or other mental impairment imposing additional and significant work-related limitation of function," in satisfaction of requirement (C) under § 12.05. Estelle contends that he suffers from loss of vision in the right eye and headaches, which either singly or in combination, impose such limitations. The ALJ found that Estelle's loss of vision did not impose significant restrictions:

Yet, the administrative law judge, in this decision, finds initially that while the claimant had exhibited some visual impairment, which would limit him from performing work requiring depth perception, such limitations are not significant enough to fall within the contemplation of § 12.05(C) of the Listing of Impairments and that the claimant has simply failed to meet his burden of proof in this instance.

(Tr. 158–159). He further stated:

Even if it (sic) were to assume that the loss of one eye constitutes a severe impairment falling within the contemplation of § 12.05(C) of the Listing of Impairments, still, satisfying the criteria of this section only creates a rebuttable presumption of disability, which presumption is rebutted by the claimant's long history of work activity. To the Administrative Law Judge the claimant has demonstrated, as evidenced by his earnings certification entered into the record as Exhibit 13, that he can engage in consistent work activity despite his low I.Q. and his visual impairment, rebutting the presumption of disability created in section 12.05(C).

(Tr. 159).

The ALJ's finding that the Listing of Impairments creates a "rebuttable presumption" of disability is inconsistent with the Secretary's well-established sequential analysis. The Fifth Circuit has held that the Secretary's analysis is terminated at the point where a finding of disabled or not disabled is made. *Lovelace v. Bowen*, 813 F.2d 55, 58 n. 15 (5th Cir.1987). Whether Estelle's impairments meet the criteria of § 12.05(C) is determined by a comparison of the characteristics of his symptoms with those given in the Listing, without consideration of vocational factors. Consideration of Estelle's ability to perform his past work does not arise until Step 4, which is never reached if a finding of "disabled" is made at Step 3. Consequently, the ALJ's finding that Estelle's impairments failed to meet the criteria of Appendix 1 must be analyzed without reference to Estelle's past work.

The SSA regulations do not define the "significant work-related limitation of function" required by § 12.05(C), and I am un-

able to find any Fifth Circuit decision interpreting this phrase. *See Pullen v. Bowen,* 820 F.2d 105, 109 (4th Cir.1987). Other circuits which have considered the question are in agreement that the impairment need not be disabling in itself:

> If the plaintiff's physical impairment were required to be independently disabling, section 12.05(C) would be rendered meaningless. Therefore, something less than a preclusion from any substantial gainful employment must apply.

*Branham v. Heckler,* 775 F.2d 1271, 1273 (4th Cir.1985). *See also Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 (1st Cir.1985); *Cook v. Bowen,* 797 F.2d 687, 690 (8th Cir.1986); *Edwards v. Heckler,* 755 F.2d 1513, 1515 (11th Cir. 1985).

*Nieves* holds that where a claimant's impairment is found to be "severe" under step two of the Secretary's analysis, it automatically satisfies the "significant limitations" standard of § 12.05(C). 775 F.2d at 14. *Cook* holds that an illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal. 797 F.2d at 690.

Under either *Nieves* or *Cook,* the evidence clearly shows that Estelle's vision loss constitutes a significant limitation in addition to his I.Q. scores. I find the evidence sufficient to establish that Estelle is disabled and entitled to benefits because his impairment meets or equals § 12.05(C).

It is therefore my recommendation that the Secretary's motion for summary judgment be denied and that Estelle be granted benefits consistent with an onset date of October 31, 1985.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) days from receipt of this report and recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling. FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION CONTAINED IN THIS REPORT WITHIN TEN (10) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.

Lafayette, Louisiana, this 14th day of September, 1989.