Eddie G. LAFFITTE 438–35–3371

v.

Kenneth S. APFEL, Commissioner
of Social Security.

No. Civ.A. 98–0946.

United States District Court,
W.D. Louisiana.

Dec. 14, 1999.

---

Nina C. Coleman, Kisatchie Legal Services Corp., Natchitoches, LA, for Eddie G. Laffitte, plaintiff.

John A Broadwell, U.S. Atty's Office, Shreveport, LA, for U.S. Comm. Social Security Admin., defendant.

## JUDGMENT

STAGG, District Judge.

On August 19, 1999, Magistrate Judge Roy Payne issued a Report and Recommendation ("R & R") in the above captioned case, which is attached to this judgment as Exhibit 1. Record Document 10. This court agrees with the portion of the Magistrate's R & R that holds that the Administrative Law Judge ("ALJ") erred by not considering the side effects of medication under the second prong of Listing 12.05C. *See* Record Document 10 at 8–9. However, this court finds that the Magistrate Judge's holding that the plaintiff was disabled was premature at this stage of the litigation. The ALJ is therefore instructed to consider whether the side effects of the plaintiff's medication satisfy the second component of Listing 12.05C. Accordingly, the decision of the ALJ is **REVERSED,** and this case is **REMANDED** to the ALJ for further proceedings not inconsistent with this judgment.

## REPORT AND RECOMMENDATION

PAYNE, United States Magistrate Judge.

### Introduction

Eddie G. Laffitte ("Plaintiff") filed an application for supplemental security in-

come ("SSI") in which he alleged that he became disabled in May of 1993. The application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff, who was born in 1961, was 34 years old at the time of his hearing. He has an eighth grade education and an unskilled work background in jobs such as janitor at a nursing home and laborer on a road crew. ALJ Barry Best heard testimony from Plaintiff, his parents and Vocational Expert ("VE") Peggy Kelley. Plaintiff based his claim of disability upon mental retardation, related limitations and a seizure disorder. The ALJ also denied the application and the Appeals Council affirmed. In accordance with the court's Scheduling Order, Plaintiff has identified three issues on appeal:

1. The ALJ erred by not finding that Plaintiff's impairments meet or equal in severity the limitation described in Listing 12.05C.

2. The ALJ should have requested a medical expert to testify whether, in his opinion, Listing 12.05C had been met or equaled.

3. The ALJ failed to determine whether a significant number of jobs exist in the regional economy where Plaintiff resides.

Plaintiff properly presented each of these issues to the Appeals Council, thus exhausting his administrative remedies and providing this court with jurisdiction. (Tr. 148–49, Letter to Appeals Council) and *Paul v. Shalala,* 29 F.3d 208 (5th Cir.1994) (court has no jurisdiction over issue unless raised before Appeals Council).

**Standard of Review; Substantial Evidence**

■ This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990). "Substantial evidence is more than a scintilla

and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir.1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir.1988).

**Listing 12.05; Mental Retardation**

■ If an impairment meets or equals an impairment listed in Appendix 1 of the regulations, the applicant will be considered disabled without consideration of vocational factors. 20 C.F.R. § 416.920(d). Whether an applicant meets or equals the listings is decided at step three of the familiar five-step sequential evaluation so the burden of proof is on the applicant. *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987) (claimant has burden on first four steps; burden shifts to Commissioner on step five).

Plaintiff contends that he is disabled under Listing 12.05, which provides in pertinent part:

Mental retardation refers to a significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22).

\* \* \* \* \* \*

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \* \* \* \*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

It is uncontested that Plaintiff has an IQ within the range of the listing. Clinical psychologist Ebert Van Buren reported that Plaintiff obtained a full-scale IQ of 67,

a verbal scale IQ of 67 and a performance scale IQ of 70. (Tr. 131–32) Accordingly, the issue is whether Plaintiff also suffers from "a physical or other mental impairment imposing additional and significant work-related limitation of function."[1]

Plaintiff testified at his hearing in October of 1995 that he completed the eighth grade in special education classes and attended some vocational welding classes. He can read simple newspaper articles and use the phone book, do simple addition and subtraction, and count change. His job as a janitor at a nursing home lasted about 1 ½ years. He was fired when he took a day off to interview for another job. His job as a laborer ended after one year when he was laid off without reason. Plaintiff lives with his wife, whom he drives to work five days a week. Plaintiff spends seizures, but which was compatible with a patient with seizures. (Tr. 119–20) Plaintiff's last documented seizure occurred in November of 1994. (Tr. 128) His medication dosage was then increased. At his most recent visits in February and April of 1996, Plaintiff had no complaints and said that he had not had any seizures lately. (Tr. 141)

The ALJ found that Plaintiff did not meet the requirements of Listing 12.05C because he did not suffer from an additional and significant work related impairment. His conclusion was based on a finding that Plaintiff's seizure disorder, which is controlled by medication, only restricts him from working at unprotected elevations and near dangerous moving machinery. (Tr. 14–16) The ALJ then relied upon Social Security Ruling 85–15 which provides

that "a person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restrictions do not have a significant effect on work that exists at all exertional levels." (Tr. 15)

Whether Plaintiff satisfies the Listing is a step three decision. Ruling 85–15 "is limited to those cases in which the Commissioner finds that the claimant is not disabled at Step V." *Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir.1995). ALJ Best apparently recognized this but found that the Ruling's statement that such a limitation was not "significant" would also apply at the third step. (*See* oral remarks at Tr. 152–55)

The Fifth Circuit has yet to further define the significant work-related limitation requirement. Judge Shaw, adopting recommendations by Magistrate Methvin, has addressed the issue in *Romero v. Secy. of HHS,* 707 F.Supp. 249 (W.D.La.1989) and *Estelle v. Secy. of HHS,* 751 F.Supp. 110 (W.D.La.1989). Those decisions reviewed a decision by the First Circuit that an impairment is a significant limitation if it would also be "severe" under step two of the Commissioner's analysis and a decision from the Eighth Circuit that a limitation is significant when its effect on the ability to work is more than slight or minimal. Mr. Romero's organic brain syndrome and Mr. Estelle's lack of vision in the right eye were both found to be significant. One commentator has pointed out that the two tests articulated in *Romero* and *Estelle* are

---

1. The Commissioner argues, without citation to authority, that there is a third component to this test, a diagnosis of mental retardation. The Commissioner bases this argument on the first sentence of the listing. Most courts, however, appear to read the listing to require only the two components, testing and other impairment, described in subsection C. The regulation appears to presume mental retardation if the requirements of any subsection are satisfied. It does not appear that the Fifth Circuit has spoken directly to this issue but it has implied that the test contains only two parts. *See, e.g., Selders v. Sullivan,* 914

F.2d 614, 619 (5th Cir.1990) ("a claimant must prove both of these conditions [test scores and other impairment] to meet his burden under step three [with respect to Listing 12.05(C) ]."); and *Johnson v. Bowen,* 864 F.2d 340, 345 (5th Cir.1988) ("[I]n order to meet the Listings, with IQ scores in this range, [plaintiff] must have a physical or other mental impairment imposing additional and significant work-related limitation of function."). Furthermore, Dr. Van Buren stated that Plaintiff's IQ of 67 "falls within the limits of mild mental retardation." (Tr. 131)

actually the same because the Fifth Circuit determines whether an impairment is severe at the second step by asking whether it has more than a slight or minimal effect on the ability to perform basic work. Peter J. Lemoine, *Significant Work Related Limitation of Function Under § 12.05C,* 51 Social Security Reporting Service 1003, 1006 (West, 1996). *See Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985).

Although the Fifth Circuit has not further defined § 12.05C's significant limitation requirement, it has held that certain conditions did not satisfy the requirement. *See Selders,* 914 F.2d at 614 (claimant who sustained injuries to back and knee but had normal range of motion and gait did not satisfy the requirement) and *Johnson v. Bowen,* 864 F.2d 340, 345 (5th Cir.1988) ("some depression" that had improved with treatment did not suffice).

In an attempt to satisfy the second component of the listing, Plaintiff points to (1) the limited intellectual capabilities identified by Dr. Van Buren, (2) his seizure disorder, and (3) side effects of his medication. With respect to the intellectual limitations, Dr. Van Buren stated in his report that Plaintiff is capable of simple addition and subtraction but can not handle money, his vocabulary is sub-normal, his concentration is brief, he has difficulty with perceptual organization and closure, his hand/eye coordination is faulty and he has trouble planning. Those limitations do not appear to be attributable to anything other than Plaintiff's low IQ. The regulation requires a low IQ score *and* an "other mental impairment" that imposes additional limitation. Because there is no diagno-

sis of any other mental disorder, condition or impairment, those limitations do not suffice. As for the seizure disorder, it appears to be controlled by medication. Thus, Plaintiff is left to satisfy the second component of Listing 12.05C with the side effects of that medication.

The court finds that side effects may be considered as a physical impairment, especially when the anti-seizure medication that causes them is controlling a much more serious physical impairment. It would be patently unfair to construe the regulation otherwise.[2] Given that, the court must decide whether Plaintiff's dizziness, lethargy and lightheadedness side effects are significant within the meaning of the regulation. If the term "significant" in the Listing is equated to the "severe" impairment requirement of step two (as *Romero* and *Estelle* suggest), *Stone v. Heckler* provides the definition. *Stone* holds that an impairment can be considered as not significant "only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.,* 752 F.2d at 1101. The court cannot say that of Plaintiff's impairments. Accordingly, Plaintiff is disabled under the regulations and the case should be remanded for the calculation and award of benefits.[3] In the event that the district judge or a higher court should disagree with that conclusion, the undersigned will proceed to briefly address Plaintiff's other two arguments.

**Failure to Request Medical Expert**

Plaintiff complains conclusorily that the ALJ should have requested a medical ex-

---

**2.** The Commissioner has recognized that the side effects of anti-seizure medication can affect the ability to work. Listing 11.00(A) ("Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be assessed."). *See also Gaines v. Heckler,* 1985 WL 71799 (E.D.Tex.1985) (side effects must be considered); and *Harrell v. Harris,* 610 F.2d 355 (5th Cir.1980) (remand for failure of vocational expert to consider effects of regimen of

treatment, including side effects of medication).

**3.** As for the effect of SSR 85–15, to the extent that it could be deemed applicable to step three, it is not binding on the courts as it is on the administrative agency. *Lauer v. Bowen,* 818 F.2d 636, 640 nn. 8, 9 (7th Cir.1987). *See also Dalheim v. KDFW–TV,* 918 F.2d 1220, 1228 (5th Cir.1990) (agency interpretation of FLSA not binding on court).

pert to assist him in determining whether Plaintiff's impairments meet or equal the listings. Plaintiff concedes that such a decision is within the discretion of the ALJ but fails to identify any basis for finding that the ALJ abused that discretion to an extent that might warrant judicial reversal.

**Jobs Available in the Regional Economy**

 VE Peggy Kelley testified that there were more than 157,000 kitchen worker jobs, 325,000 hand packaging jobs and over 587,000 cleaning jobs in the national economy that are available to a person with Plaintiff's limitations. (Tr. 162–63) The ALJ asked if the VE could give an opinion regarding the number of such jobs that would exist "in Louisiana or any other more local regional economy." She responded that the jobs "are distributed in the same way that the population is distributed in the U.S. The higher the population numbers exist, then the higher numbers of these types of jobs exist." (Tr. 162) Accordingly, Plaintiff's complaint that the ALJ did not find that such jobs exist in the regional economy lacks merit.

Accordingly;

**IT IS RECOMMENDED** that the decision of the Commissioner of the Social Security Administration to deny benefits be **REVERSED,** that it be held that Plaintiff **WAS DISABLED** within the meaning of the regulations as of May 1, 1993, and that this case be **REMANDED** to the Commissioner for the calculation and award of benefits consistent with that holding.

*Objections*

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir.1996) (en banc).

August 18, 1999.