William W. STONE, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health & Human Services, Defendant-Appellee.

No. 84–1100.

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1985.

Nancy Taylor Lynn, Euless, Tex., for plaintiff-appellant.

James A. Rolfe, U.S. Atty., Wayne Hughes, Asst. U.S. Atty., Fort Worth, Tex., Thomas Stanton, Mary K. Biester, Asst. Reg. Attys., Karen J. Behner, Dallas, Tex., for defendant-appellee.

Before REAVLEY, TATE and HILL, Circuit Judges.

REAVLEY, Circuit Judge:

William W. Stone appeals the district court's order dismissing his claim for Social Security disability insurance benefits.[1] Because the administrative law judge (ALJ) applied the wrong legal standard in determining that Stone's impairment was not

severe, we vacate the order of the district court and order a remand to the Secretary for reconsideration consistent with this opinion.

### I.

A 62-year-old man with a fourth-grade education, Stone worked at odd jobs as a trash collector, and as a ranch hand until August 1, 1980. He claimed in his application for disability benefits in 1980 that he could no longer work because of injuries to his chest and shoulder when a horse fell on him. The ALJ rejected his claim, finding on the basis of the medical evidence alone that Stone did not have a severe impairment as defined in 20 C.F.R. §§ 404.1520(c), 416.920(c) (1984).

### II.

Disability claims under the Social Security Act (the "Act") are evaluated by a sequential process set forth in the regulations promulgated by the Secretary. *See* 20 C.F.R. §§ 404.1520, 416.920 (1984).[2] If a claimant is found not to be disabled at any step in this sequential evaluation, the remaining steps are not considered. 20 C.F.R. § 404.1520(a) (1984).

The first step involves the determination whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.-1520(b) (1984). The second step, which is here challenged, requires the factfinder to decide whether a claimant's impairment is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c) (1984).[3] If the claimant is found to have a

---

1. Disability insurance benefits are available under 42 U.S.C. §§ 416(i), 423 (1982); 20 C.F.R. §§ 404.1–404.2127 (1984), to those who are insured under this program.

2. The sequential evaluation process in each of these regulations is identical although they apply to different parts of the Social Security Act. Part 404 applies to federal old-age, survivors and disability insurance and Part 416 applies to supplemental security income for the aged, blind and disabled. Accordingly, the remaining citations in this opinion will be limited to one of these regulations, 20 C.F.R. § 404.1520 (1984).

3. The current version of this regulation states:
   (c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.
   20 C.F.R. § 404.1520(c) (1984).

severe impairment, it is compared against a list of impairments found in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d) (1984). If the claimant's impairment is listed, the individual is considered disabled. *Id.* If it is not listed, the next step must be considered. At that point, the factfinder must decide whether the claimant can do past relevant work. 20 C.F.R. § 404.-1520(e) (1984). The final question is whether the claimant can perform any other work. Only at this stage are a claimant's residual functional capacity, age, education, and past work experience considered. 20 C.F.R. § 1520(f) (1984).

■ This court has had a number of cases in recent months in which the administrative determination was made against disability at step two on grounds of nonseverity. In *Estran v. Heckler*, 745 F.2d 340 (5th Cir.1984), we stated that the current definition of a non-severe impairment

> must be read in light of the earlier regulations defining severe impairment adopted in 1968, for, as explained by the Secretary in the Federal Register, the new terminology was intended solely to clarify, not to change, the definition of "severe impairment." The change in language was not accompanied by "an intention to alter the levels of severity for a finding of disabled or not disabled." 32 Fed.Reg. 55357–55358. In the 1968 regulations, non-severe impairment is described as, "... a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities." 20 C.F.R. § 404.1502(a) (1968).

*Id.* at 745 F.2d 340–41. We therefore construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 341 (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)); *see Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984); *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir.1984).

■ This construction of the nonseverity regulation is consistent with the view of the other circuits.[4] It is also in harmony with the most recent expression by Con-

---

4. Most of the cases raising the question whether an impairment is severe turn on the issue of substantial evidence. *See, e.g., Barajas v. Heckler*, 738 F.2d 641 (5th Cir.1984) (Secretary's decision that claimant's impairment nonsevere supported by substantial evidence). This court has noted, in *Lofton v. Schweiker*, 653 F.2d 215, 217 (5th Cir.), *cert. denied*, 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626 (1981), that the regulations allow an impairment to be found nonsevere based on medical factors alone. *Lofton* did not address the validity of the severity regulation but affirmed the Secretary's denial of disability benefits on the basis of substantial evidence. *Id.* at 218. A footnote in *Lofton* indicates that the Secretary was considering revising the severity regulation because of comments indicating that the Secretary's method for determining that an individual's impairment is nonsevere conflicts with judicial approaches defining disability. *Id.* at 217 n. 1.

The First Circuit has commented in dictum that other courts have upheld the validity of the severity regulation. *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 7 (1st Cir.1982). In doing so, the court referred to *Lofton* and to *Chapman v. Schweiker*, No. 81–1025 (10th Cir. Feb. 26, 1982). Yet *Lofton* did not decide the issue because the question of the validity of the severity regulation was not raised. *Chapman* approved the severity regulation before a divided panel; after a rehearing en banc, it was withdrawn and remanded to the district court for further development.

The validity of the severity regulation was raised in the Second Circuit in *Chico v. Schweiker*, 710 F.2d 947 (2d Cir.1983). The Secretary argued in *Chico* that other courts of appeals had upheld the validity of the severity regulation. The Second Circuit disagreed, recognizing that *Lofton* had simply assumed that the regulation was valid and that the Tenth Circuit had withdrawn its opinions upholding its validity. *Id.* at 952–53. Chico argued that the regulation contradicts section 423(d)(2)(A) because it states that a claimant's age, education, and work experience will not be considered in the initial determination of whether an impairment is severe. *Id.* at 953.

The court in *Chico* found it unnecessary to "resolve the ... close question of the validity of the 'severity' regulation." *Id.* It reversed the decision of the district court because it did not deal with the dispositive issue. Chico was denied disability benefits twice. Initially, the disability examiner found that Chico had a "se-

gress, which amended the Act in 1984 to add a new provision regarding the termination of disability benefits. H.R. 3755, 98th Cong., 2d Sess., 130 Cong.Rec. 9821–39 (1984). The Conference Report discussed the sequential method currently used:

> Under current policies, if a determination is made that a claimant's impairment is not severe, the consideration of the claim ends at that point.... [I]n the interests of reasonable administrative flexibility and efficiency, a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairment or combination of impairments is slight enough to warrant a presumption, even without a full evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected. The current "sequential evaluation process" allows such a determination and the conferees do not intend to either eliminate or [to] impair the use of that process. The conferees note that the Secretary has stated that it is her plan to reevaluate the current criteria for nonsevere impairments and expect that the Secretary will report to the Committees on the results of this evaluation.

*Id.* at 9829. The prevailing idea, then, among the courts and Congress, is that some impairments are so slight that the

---

vere" impairment within the meaning of 20 C.F.R. 404.1520(c) (1983). That examiner then reached the last stage of the sequential evaluation process before denying Chico's application for disability benefits. On reconsideration, another examiner denied Chico's application on the basis that he did not have a severe impairment. The court feared that this denial was improperly based on a statement by the medical advisor authorized by the Social Security Administration, to the effect that Chico did not have a severe impairment as listed in the regulations. The case was therefore remanded to the district court for clarification of this issue. 710 F.2d at 953–55.

The Sixth Circuit is the only circuit that has expressly upheld the validity of the severity regulation. *See Gist v. Secretary of Health and Human Services*, 736 F.2d 352 (6th Cir.1984). The court recognized that the statute requires an impairment to be severe before benefits can be received. Accordingly, it concluded that the regulation is not improper.

The Eleventh Circuit recently decided a case in which "[t]he key point [was] what is meant by a severe impairment." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir.1984). The ALJ had denied Brady's claim for disability benefits on the basis of the medical evidence alone, relying on the definition of disability found in the 1978 regulations, which stated:

> If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c) (1984). The 1968 regulations, amended in 1978, stated: "Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities." 20 C.F.R. § 404.1520(a) (1968). The court concluded that the 1978 amendment was "not meant to alter the level of severity for a finding of not disabled on the basis of medical considerations alone." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). The court also concluded that the Secretary intended to follow the 1968 definition of a severe impairment in the 1980 regulatory amendments. *Id.* The court then stated the definition of a non-severe impairment as "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* Using the above-stated definition of non-severe impairment, the court concluded that the decision below was not supported by substantial evidence. *Id.*

The Seventh Circuit, in *Taylor v. Schweiker*, 739 F.2d 1240 (7th Cir.1984), reversed a decision of an ALJ who had concluded that the claimant's impairments were not severe. The ALJ had focused on a psychiatrist's "comment that a specific diagnosis was not warranted, and the claimant's testimony that she could take care of her personal needs and housework." *Id.* at 1242. The Seventh Circuit disagreed with the ALJ's conclusion that the claimant's impairment was not severe because the record did not support "the conclusion that her depression does not significantly limit her ability to perform basic work-related functions." *Id.* at 1243. The finding that she could do her own housework failed "to address the effect her depression would have on her ability to perform a job." *Id.* The court concluded that remand was appropriate in this case because the evidence, which may or may not have indicated that the claimant was totally disabled, warranted further inquiry. The initial step in the sequential process was not the proper point to end the evaluation in this case. *Id.*

ability of the claimant to work can be decided without a full evaluation of vocational factors. The factfinder is entitled to follow a sequential process that disposes of those cases at that early stage. But it is impermissible to make that disposition on the basis of a standard of severity that denies disability benefits to claimants who are in fact unable to perform substantial gainful activity.

## III.

### A. The Secretary's Contention

The frequency of the administrative determinations this court has found it necessary to reject, and the argument for the Secretary in the instant appeal, demonstrate the deeper problem. The Department of Health and Human Services disagrees with our construction of its regulations, and the administrative findings are not being made under the standard of nonseverity stated in *Estran, Davis,* and *Martin.*

If the Secretary, the administrative law judges, and appeals council regard the severity of impairment requirement as a matter for administrative definition and decision apart from the ability or inability of a particular claimant to engage in substantial gainful activity, their disability decisions will not comport with the law as we recognize it. If they allow the factfinding to rest alone upon a marshaling of medical proof under an administrative standard of medical severity that disregards the ability of any or all claimants to work, the administrative findings will not be acceptable to us; and it will be inappropriate for courts to review these administrative decisions by affirming upon substantial evidence of the claimants' inability to do past work, or engage in work available in the national economy. *See Martin v. Heckler,* 748 F.2d 1027, 1031, 1034 (5th Cir.1984).

The Secretary insists, however, that we have misconstrued the regulation and that it is proper to make the determination of severe or nonsevere on the basis of the medical evidence alone, regardless of whether that evidence necessarily determines the individual's ability to work.

That view is applied in the procedures currently used by the Social Security Administration. Soc.Sec. Rul. 82–55 (1980) lists twenty impairments illustrative of nonsevere impairments. The ALJ automatically considers a person with an impairment in this list as not being disabled. The Secretary contends that the Act allows her to impose "additional requirements" to the inability to work when deciding disability for purposes of entitlement to social security and insurance benefits. The supplemental brief, subscribed by an Assistant Attorney General, the United States Attorney for the Western District of Texas, and the Office of the General Counsel of the Department of Health and Human Services, states:

> [L]iterally read, sections 223(d)(2)(A) and 1614(a)(3)(B) do not specifically require that a finding of disability ... be made where the individual's impairment(s) prevents the performance of previous work and, when considered together with vocational factors, any other kind of substantial gainful work. Rather, these sections merely provide that an individual shall be determined to be under a disability "only if" these requirements are met, thus indicating the presence of additional requirements under the basic definition of disability in sections 223(d)(1)(A) and 1614(a)(3)(A).

### B. The Statute

Section 423(d) states in part:

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

\*    \*    \*    \*    \*    \*

(2) For purposes of paragraph (1)(A)—

(A) an individual (except a widow, surviving divorced wife, widower, or surviving divorced husband for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.

42 U.S.C. § 423(d)(1)(A), 2(A), (3), (4) (1982).

The Secretary has construed section 423(d) so that she may deny disability benefits to persons who are unable to engage in substantial gainful activity.[5] Under her reading of the statute, she has the discretion to deny disability benefits to persons

who do not have a physical or mental impairment that is "severe" under *her definition of the term*. This determination is made without regard to the individual's ability to perform substantial gainful activity.[6]

The ultimate object of this statute, by its own definition, is to provide assistance for that person who is unable "to engage in any substantial gainful activity." 42 U.S.C. § 423(d)(1) (1982). To ensure that only those truly unable to work receive benefits, Congress has added the requirement of a medically determinable physical or mental impairment of twelve months' duration and specified that the impairment must either prevent the applicant from continuing his or her previous work or performing other gainful work—taking into consideration that person's age, education, and work experience. If we read this statute to authorize the Secretary to deny "disability" to a claimant suffering a physically or mentally disabling impairment, and for that reason unable to engage in substantial gainful work, whenever the Secretary is not satisfied with the "severity" of the impairment, we would be holding contrary to the expressed Congressional purpose and rewriting the statute to leave the determination of disability solely to the Secretary's discretion about severe impairments. We can find no justification in the statutory language, nor in the history of this legislation, for the Secretary's position.

The term "disability" was first added to the Act in 1954. H.R. 9366, 83d Cong., 2d

---

**5.** Section 423(d) is the codification of section 223(d) of the Act, which applies to old-age, survivors, and disability insurance. Section 1382c is the codification of section 1614 of the Act, which contains an identical definition of disability for purposes of supplemental security Income.

**6.** The Department of Health and Human Services is the administrative agency charged with executing the Social Security Act and has the primary responsibility for determining the scope of its authority in executing the Act. In our review, we may not set aside the Secretary's interpretation of the Act merely because we read it differently. The regulations promulgated by the Secretary must be accorded an even greater weight than an interpretation of the

statute and can be set aside only if they exceed the discretion given to the Secretary. *See Western Coal Traffic League v. United States*, 694 F.2d 378, 383 (5th Cir.1982), *modified on other grounds*, 719 F.2d 772 (5th Cir.1983) (en banc), *cert. denied*, —— U.S. ——, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984).

We must still determine, however, whether the Secretary "has transgressed the bounds fixed by Congress, else both judicial review and the constitutional stricture that ultimate legislative power not be delegated would both be meaningless." *Id.* We are less constrained when reviewing an agency's construction of its governing statute than when reviewing its regulations, because courts are the final authority concerning statutory interpretation. *Id.* at 383–84.

Sess. (1954). It was defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." *Id.* The Senate Committee on Finance stated that the determination of disability had two aspects: "(1) There must be a medically determinable impairment of serious proportions which is expected to be of long-continued and indefinite duration or to result in death, and (2), there must be a present inability to engage in substantial gainful work by reason of such impairment." S.Rep. No. 1987, 83d Cong., 2d Sess. 21, *reprinted in* 1954 U.S.Code Cong. & Ad.News 3710, 3730.

The Act was amended again in 1956, granting disability benefits to insured individuals for the first time. To qualify for disability benefits, individuals had to be between the ages of 50 and 65 and be under a disability. The 1954 definition of disability was retained in the 1956 amendment and the claimant was required to furnish "such proof of the existence [of the disability] as may be required." H.R. 7225, 84th Cong., 2d Sess. (1956). The Senate Committee on Finance objected to the passage of that amendment because of the difficulty in determining when an individual is disabled and the increased cost that would result to the Social Security System. S.Rep. No. 2133, 84th Cong., 2d Sess. 3–5, *reprinted in* 1956 U.S.Code Cong. & Ad. News 3877, 3881–82. Minority members of the Committee urged the bill's passage, believing the then-existing system to be incomplete because it did not provide benefits for workers forced into early retirement because of disabilities. *Id.* at 3941. They also believed that "[t]he definition of disability contained in the proposal is a conservative one, limited to medically determinable physical or mental impairment which prevents the individual from engaging in substantial gainful activity." *Id.* at 3947.

The statutory scheme described above was retained until 1967, when portions of the Act were again amended. The 1956 definition of disability was retained in the 1967 amendment, but the duration requirement was changed from a long-continued and indefinite duration to "a continuous period of not less than 12 months." H.R. 12080, 90th Cong., 1st Sess. (1967). The Act was also amended to require that an impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.*

The Senate Report accompanying the 1967 amendment indicates that there was concern about the increase in disability benefits awarded due to court decisions. One concern was that courts had awarded disability benefits solely on the basis of unsupported statements by the claimant and conclusions of others. The report said that these statements and conclusions "do not establish the existence of disability for purposes of social security benefits based on disability unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions." S.Rep. No. 744, 90th Cong., 1st Sess. 46–50, *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2880–83. The report then noted that some impairments could be of a level of severity presumed, under administrative rules, to prevent an individual from engaging in substantial gainful activity. Further, it stated that the amendment contained specific requirements that had to be met by those people to whom the presumed level of severity did not apply. *Id.*

Congress has stated that the Act itself contains the specific requirements a claimant must meet to be considered disabled. *See* 1967 U.S.Code Cong. & Ad.News at 2883. The Secretary does not have the authority to construe the severity regulation so as to deny benefits to individuals who are disabled within the meaning of section 423(d). This circuit in *Estran, Davis,* and *Martin* has stated the proper construction of the term "severe impairment" found in the severity regulation, and the Secretary's construction would render the regulation invalid.

## IV.

In view of both the Secretary's position in this case and our recent experience with cases where the disposition has been on the basis of nonseverity, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration. Since we conclude that the wrong standard was applied in the present case, we reverse the judgment of the district court dismissing Stone's claim, and we remand the case to that court with instructions to remand the case to the Secretary for reconsideration of the facts in the light of the proper standard, after considering any further evidence as may be offered by either the claimant or the Secretary.

REVERSED AND REMANDED.