**Antonio LOPEZ, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.**

No. 86–3104.

United States Court of Appeals, Fifth Circuit.

Dec. 29, 1986.

Wm. P. Schuler, Chalmette, La., for plaintiff-appellant.

Nancy A. Nungesser, Asst. U.S. Atty., John Volz, U.S. Atty., New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

An applicant for Social Security benefits appeals the district court's affirmance of the determination by the Secretary of Health and Human Services that he was not disabled before May 16, 1984. We find substantial evidence to support the ruling and affirm.

## I

The plaintiff, Lopez, has a number of medical problems including congestive heart failure, hypertension, adult onset diabetes mellitus, hyperlipidemia, renal insufficiency, gout, and asthma. As a result of these ailments, Lopez quit his job in 1983 and applied for Social Security disability benefits, alleging an onset date of June 3, 1983. The Secretary denied his application. Lopez then requested a hearing before an Administrative Law Judge. The ALJ found Lopez disabled after May 16, 1984, concluding that until that date he "retained the ability to engage in his former work" as a chef. The Appeals Council affirmed the ALJ's decision. Lopez then sued for review of this decision in the United States District Court for the Eastern District of Louisiana. The district court, approving the magistrate's report, entered judgment for the Secretary.

## II

Lopez contends that the Secretary's conclusion that Lopez was not disabled before

May 16, 1984, is not supported by substantial evidence. Substantial evidence is such relevant evidence that a reasonable mind might accept to support a decision. *Pate v. Heckler,* 777 F.2d 1023, 1027 (5th Cir.1985). To support his determination that Lopez was not disabled before May 16, 1984, the administrative law judge reviewed in detail Lopez' medical history. According to an examination in January 1980 at the Ochsner Clinic, Lopez had early congestive heart failure. After an examination in March 1980, the clinic reported that Lopez had hypertension, adult onset diabetes mellitus-Type IV, hyperlipidemia, renal insufficiency, gout, and asthma. After the clinic doctor prescribed medication, Lopez' condition seemed to improve. In December 1981, Lopez returned to the clinic, and according to the examination he suffered from mild bilateral decrease in renal function, uncontrolled hypertension, compensated congestive heart failure, and diabetes mellitus. Later, he was hospitalized for evaluation of accelerated hypertension.

In August 1983, the clinic again examined Lopez and concluded that he had bilateral osteoarthritis, uncontrolled diabetes mellitus, controlled hypertension, compensated hypertensive cardiovascular disease, and chronic renal disease with diabetic nephropathy and nephrosclerosis. The clinic doctor reexamined Lopez in March 1984 and determined that Lopez had hyperglycemia, hyperlipoproteinemia due to poor diabetic control, uncontrolled Type II diabetes mellitus, controlled hypertension, and chronic renal disease. After this examination, Lopez was placed on insulin.

In April 1984, x-rays of his right leg and hip showed hypertrophic spurring and peripheral arteriosclerosis. By May 16, 1984, the clinic's diagnosis was diabetic amyotrophy, which made it difficult for Lopez to walk due to pain. On May 30, 1984, the clinic doctor concluded that Lopez was "totally disabled ... and the prognosis for rehabilitation is not good."

After reviewing this medical history, the ALJ determined that Lopez was disabled as of May 16, 1984, "particularly in view of the statement of his treating physician [at the clinic] submitted on that date." The ALJ concluded, however, that Lopez was not disabled before May 16, 1984, in light of the conclusions of Dr. Nitsche, who examined Lopez at the behest of the Administration on November 8, 1983. Dr. Nitsche observed that Lopez had a very stiff gait and walked slowly, but required no ambulatory assistance. Dr. Nitsche attributed musculoskeletal discomfort to a combination of bilateral trochanteric bursitis, periodic attacks of gout in the great toe, and generalized deconditioning. There was no overt evidence of congestive heart failure; Lopez' blood pressure was fairly well controlled; and his description of his chest pain was not classic for angina pectoris. Dr. Nitsche concluded that Lopez did not appear to be severely impaired by his variety of problems.

Lopez concedes that he had the burden of showing that he could not perform his past work as a chef before May 16, 1984. We are persuaded that he failed to meet this burden. Based on Dr. Nitsche's report, the ALJ could reasonably conclude that Lopez could perform his past work before November 1983.

Lopez nevertheless argues that the clinic doctor's report on May 16, 1984, which stated that Lopez was disabled, simply reconfirmed the diagnoses in August-September 1983 and March 1984. But the fact that the same impairments existed in August 1983 and May 1984 does not necessarily mean that Lopez could not perform his work as a chef before May 1984. Rather, the evidence must show that the impairments were severe enough at each date to render Lopez unable to perform his past work. The evidence supports a conclusion that Lopez' impairments became more severe between August 1983 and May 1984. The clinic doctor noted on May 30, 1984 that "[s]ince August of 1983 [Lopez] has had worsening pain in the right hip and back and gradual development of pain in the lower extremities which is now relatively severe. The patient has developed weakness in the lower extremities which pre-

vents him from standing for long periods of time." Moreover, the clinic doctor stated that Lopez' diabetes, which had been controlled on diet and oral medication since January of 1982, became uncontrolled requiring that Lopez be started on insulin. But it was not until May 16, 1984 that the clinic doctor determined that Lopez had developed diabetic amyotrophy, making it difficult for Lopez to walk.

Lopez argues that under *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir.1981), this court must give greater weight to the examinations conducted by Lopez' regular doctor at the clinic than to Dr. Nitsche's examination. Such an additive does not dictate a different result however. The reports of Dr. Nitsche and the clinic doctor do not contradict each other. Even the clinic doctor did not state until May 1984 that Lopez had diabetic amyotrophy, which reduced Lopez' mobility.

In sum, the ALJ considered all the relevant evidence and determined that Lopez was not disabled before May 16, 1984. If we were to reweigh the evidence, we might not reach the same conclusion as the ALJ. But our inquiry is limited to whether substantial evidence supports the ALJ's ruling. We are persuaded from our review of the record that there was substantial evidence to support the ALJ's ruling.[1]

AFFIRMED.

---

1. Lopez also argues that the ALJ erred in relying solely on Dr. Nitsche's report to determine the severity of Lopez' impairments. Lopez cites *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985). But unlike *Stone*, the ALJ *did* find that Lopez suffered from "severe" impairments. The ALJ, however, proceeded to find that the impairments did not prevent Lopez from doing his past relevant work.