**Murphy ASSAVEDO,**

v.

**Kenneth S. APFEL, Commissioner of Social Security.**

Civil Action No. 99–0958.

United States District Court, E.D. Louisiana.

Sept. 29, 2000.

Robert Ellis, Ponchatoula, LA, for plaintiff.

Eneid A. Francis, Kathryn Weekley Becnel, U.S. Attorney's Office, New Orleans, LA, for defendant.

### ORDER AND REASONS

MITCHELL, Senior District Judge.

Plaintiff Murphy Assavedo seeks judicial review pursuant to Section 405(g) of the Social Security Act (the Act) of the final decision of the Commissioner of Social Security Administration (the SSA), which denied his claim for disability benefits (DIB), Title II, §§ 216(I) and 223 of the Act, 42 U.S.C. §§ 416(I) and 423, and supplemental security income benefits (SSI) under Title XVI, §§ 1602 and 1614(a)(3)(A) of the Act, 42 U.S.C. § 1381(a). Plaintiff and defendant filed timely cross-motions for summary judgment. Record Doc. Nos. 12, 14.

### 1. PROCEDURAL HISTORY

Assavedo applied for DIB on July 11, 1995, alleging disability since October 3, 1994, due to "chest pains." (Tr. 35–39, 83). The commissioner denied his application initially and on reconsideration. (Tr. 50–53, 66–70). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on February 26, 1997. (Tr. 281–327). The ALJ denied Assavedo's application on July 24, 1997. (Tr. 15–16). After the Appeals Council denied Assavedo's application on February 26, 1999, (Tr. 5–6), the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review.

### 2. STATEMENT OF ISSUES ON APPEAL

Plaintiff's request for judicial review raises the following issues:

A. That the ALJ failed to apply Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985);

B. That the hypothetical question asked of the Vocational Expert (VE) was defective;

C. That the ALJ erred by not crediting all of plaintiff's complaints;

D. That the ALJ's assessment of plaintiff's residual functional capacity ["RFC"] did not contain all the necessary findings; and

E. That the ALJ erred in finding that plaintiff had a sixth grade education.

### 3. ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

A. The medical evidence establishes that the claimant has severe chest pain, but that he does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.

B. The claimant's subjective complaints are not fully credible, and his symptoms are not as limiting as alleged.

C. The claimant has the residual functional capacity [RFC] to perform the physical exertion and nonexertional requirements of light work except for being limited to sitting for 30 minutes and standing for 30 minutes (20 CFR 404.1545 and 416.945).

D. The plaintiff is unable to perform his past relevant work as a baker's helper, a fisherman, and a laborer.

E. The claimant is 44 years old [at time of. February, 1997 hearing], which is defined as a younger individual (20 CFR 404.1563 and 416. 963).[1]

F. The claimant has a sixth grade education (20 CFR 404.1564 and 416.964).

G. Considering an exertional capacity for a wide range of light work and the claimant's age, education, and work experience within the framework of the Administration's medical/vocational rules found in 20 CFR 404.1569, 20 CFR 416.969, and Section 202.00(g), Appendix 2, Subpart P, Regulations No. 4 supported by vocational expert testimony, the claimant has the capacity to perform a wide range of work representing sub-

---

1. Counsel for claimant asserts that plaintiff reached the age of 45 on November 10, 1997. (Plaintiff's [P's] Statement of Undisputed

Facts, p. 2). He is therefore 47 at the time of this decision.

stantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs. Examples of such jobs are: kitchen worker, carver, pantry worker, or silver wrapper. (Tr. 25–26).

### 4. *Standards of Review*

The function of this Court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Spellman*, 1 F.3d at 360. This Court may not reweigh the evidence, try the issues de novo or substitute its judgment for the Commissioner's. *Id.; Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Villa*, 895 F.2d at 1022; *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir.1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990).[2] The five-step inquiry terminates if

---

**2.** The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1).

the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995).

■ The claimant has the burden of proof under the first four parts of the inquiry. *Id.* If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan,* 38 F.3d at 236; *Kraemer v. Sullivan,* 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id.; accord Selders,* 914 F.2d at 618.

■ The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

### A. *Factual Background*

Plaintiff Murphy J. Assavedo, along with the VE, testified at the hearing on February 26, 1997, before the ALJ. (Tr. 281–327), He was 44 at the time of the hearing, married, with two children, ages 18 and 14. His 18 year old son receives SSI because he is handicapped. His wife works part time for the Tangipahoa School Board. He stated he was 6'2" tall, and weighed 285 pounds, but that his weight fluctuated a bit and at times he was over 300 pounds. He responded to a question by the ALJ as to how far he went in school by saying "seventh grade." He then explained he

was in special education in 7th grade, but when the school burned down, his mother did not re-enlist him. (Tr. 287–290). (Later on, he explained he had repeated 7th grade four times. [Tr. 3 10] ). He was seventeen at that time. He said he started working part time, but he never received any additional job training of any sort. He said he could read or write "a little bit," and could sign his name and make change. The last time he worked for a living was in 1994 or 1995, when he worked for two weeks at Vandazzo's bakery, as a helper. He stopped in February of 1995 because he got sick. His prior work experience included working on an oyster boat, and working as a commercial crabber. He did heavy labor at that time.

In response to a question by the ALJ as to why plaintiff did not feel he could do any work, he stated his back and leg were giving him problems, that it was hard for him to get up and down the steps at his house, and that if he picked up too much, he would get blood in his urine. He also suffered with a pain on his right side, and suffered with prostate problems of some sort. (Tr. 296). He said if he picked up over 30 pounds, he would get blood in his urine. He said he could walk a couple of blocks, but then would have to sit down and relax because the pain "shoots so hard." (Tr. 298). He can sit for about 30 minutes. He stated x-rays showed his heart was "a little bit bigger than a regular heart," but that he had cut back on his salt and cholesterol and his diet, so as far as he knew, his heart was O.K. (Tr. 398). He testified he suffered with his right arm, in that it would get a sharp pain and get numb and sometimes swell up. He also said he sometimes had pain in his left arm, but not as bad as in the right.

In response to questioning about his back, plaintiff stated that sometimes if he turns too fast, [the pain] makes him drop

To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00–204.00, 416.969 (1994)("Medical–Vocational Guidelines").

to his knees. He said his doctor told him he had "a gap in my disks back there." (Tr. 303). He takes fluid pills and Flexerils and had a couple of more pills ordered that had not come in yet.

He also testified that he got up at 5:00 a.m. to "get ready to get his kid on the bus," that he sometimes cooked breakfast, that he bathed and dressed himself and did dishes and a little laundry, and that he was able to drive his van. He also went grocery shopping at times with his wife. (Tr. 307–308). He stated he used to play football with his kids and everybody else's kids, until he go hurt. Now, he cannot even throw a football. (Tr. 314). He testified he was working on an oyster dock on February 17, 1995, when a sharp pain hit him and he couldn't do any more. He then started seeing doctors at Charity Hospital; he says they keep giving him different answers as to what is wrong with him, and that they really don't know exactly what it is. (Tr. 315).

The vocational expert (VE) testified that plaintiff had done heavy to very heavy work in the past, but that he had no transferrable skills. She stated that he would fall into the "light duty" category. (Tr. 319). She also took into account his "special education" limitations.

### B. *Medical and Other Evidence*

This Court has reviewed the medical records in evidence and the ALJ's summary of this evidence [ (Tr. 19–21)] and finds the ALJ's thorough summary was substantially correct and incorporates it herein by reference.

The ALJ found that the medical evidence established that claimant had chest pain and back pain. One or more of those impairments were found to impose significant limitations on his ability to function in the work place, and he therefore has a "severe impairment." (Tr. 19). The ALJ went on to find that plaintiff could not perform his past relevant work as a heavy laborer, and proceeded, with the aid of a vocational expert, to determine that there were sufficient numbers of light duty jobs

with the noted restrictions available in the state and national economy.

### C. *Legal Arguments*
### Did ALJ fail to correctly apply *Stone v. Heckler?*

■ Plaintiff first maintains that the ALJ did not comply with the requirements of *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), which provides that "the burden of proof shifts heavily to the Commissioner once it is determined that the claimant can no longer perform his past relevant work due to disabling impairments and their symptoms." (P's memorandum [Mem.] p. 8). He maintains that this case was not cited by the ALJ, and was not distinguished or relied upon in arriving at an unfavorable decision. However, this Court's reading of *Stone* suggests that it is only in cases where the claim has been rejected on the basis of *nonseverity* that the Court of Appeals will assume the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement, unless the correct standard is set forth by reference to the *Stone* opinion or another to the same effect, or by express statement that construction given to the applicable regulation is used. *Stone* at 1106, The ALJ in this case *did* find that plaintiff was suffering from a severe impairment. *Id.* (Tr. 19). Furthermore, The ALJ specifically stated that once it is determined a claimant cannot do his past work, "the burden shifts to the Commissioner to prove he is capable of performing other jobs existing in significant numbers in the national economy." (Tr. 23). The ALJ explicitly found that "the claimant has the capacity to perform a wide range of work representing substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs." (Tr. 26).

### Was the hypothetical question asked of the Vocational Expert (VE) defective?

■ Plaintiff next contends that the hypothet posed by the ALJ to the VE was

patently deficient. He argues that the hypothetical description of plaintiff's RFC failed to mention proven shoulder and neck pain, coupled with radiating numbness affecting both arms, which he states was supported by testimony and medical findings of record. He further argues that his chronic stomach and lower back, leg and knee pains and edema, hypertension, and side effects from certain medications were not included in the hypothet. Additionally, plaintiff maintains that the ALJ "failed to develop whether or not the claimant could perform work activities for 8 hours a day and 5 days a week," which plaintiff maintains is a "requisite criteria" if gainful employment is to be characterized as such under the regulations. (P.Mem. p. 9).

Defendant argues that plaintiff's contentions regarding the alleged deficiency of the hypothet are without merit. An ALJ's hypothet must reasonably incorporate all disabilities *recognized by the ALJ. Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994). According to the defendant, the ALJ did incorporate all *reasonable* disabilities into his hypothet to the VE. Further, defendant suggests that plaintiff's complaints regarding the ALJ's consideration of his subjective complaints is more properly addressed under the next issue (i.e., if ALJ erred in not crediting all of plaintiff's subjective complaints).

In his examination of the VE, the ALJ determined that she was familiar with the definitions of the Commissioner as far as skill and exertional levels were concerned, that she had read the reports and listened to the plaintiff's testimony. (Tr. 318). She determined that he had no transferrable skills. In essence, the ALJ's hypothet was that plaintiff could lift 10 pounds on a regular basis, 30 pounds on an occasional basis, walk for a couple of blocks, stand and sit for 30 minute intervals. The VE found that would place plaintiff in a "light duty" category. (Tr. 319). The ALJ also told her to include in the hypothet the plaintiff's "special ed background" and his "7th-grade limitation in his educational level." (Tr. 320). The VE found that plaintiff had no transferrable skills, and that the limitations given in the hypothet would put plaintiff into the light duty category. She stated he could perform certain jobs that would fall under the definition of "kitchen worker", with 102, 919 positions available in the United States and 1,275 jobs available in Louisiana. "Miscellaneous food prep" is apparently a separate category of jobs that would fall into the light work category, with 378,151 available nationwide and 5,015 available in Louisiana. (Tr. 319–321).

Plaintiff's attorney was allowed to pose additional questions and limitations to the VE, but she did not find that the additional proposed limitations would affect the plaintiff's ability to perform the number of jobs available. However, it was agreed that the file would remain open for 30 days in order for additional recent medicals to be reviewed. The ALJ advised plaintiff's attorney he would be allowed to submit additional questions by way of interrogatories to the VE if he believed that such was needed after reviewing the additional medicals. (Tr. 321). No additional interrogatories were submitted. The Appeals Council indicated it had reviewed the additional evidence (received after the hearing), as well as the contentions raised by counsel in his August 7, 1997, but concluded that there was no basis for changing the ALJ's decision. (Tr. 5). This Court agrees that the evidence presented after the hearing provided no basis for changing the ALJ's conclusion that plaintiff was not disabled.

### Whether the ALJ erred in not crediting all of plaintiff's complaints?

Plaintiff next contends that in the sequential evaluation made by the ALJ, there were several blatant oversights or understatements, all resulting in inequitable and unrealistic conclusions adverse to claimant's right to benefits. The Court notes that the limitations used by the ALJ were consistent with plaintiff's own testimony at the administrative hearing. Moreover, the Court has closely examined

all of the medical and other evidence received after the administrative hearing but before the case was reviewed by the Appeals Council, and agrees with the Appeals Council's finding that the additional evidence did not provide a basis for changing the ALJ's decision.

### *Whether the ALJ's assessment of plaintiff's residual functional capacity contained all the necessary findings?*

In short, the Court finds that the ALJ's assessment of plaintiff's residual functional capacity did contain all the necessary findings. An examination of all the medical evidence and all of the testimony presented at the hearing has convinced the Court that the ALJ correctly assessed plaintiff's residual functional capacity, and that the additional evidence presented after the hearing provides no basis for changing that assessment.

### *Whether the ALJ erred in finding plaintiff had a sixth grade education?*

The Court agrees with the defendant that there is no authority for the proposition that a finding of a lower educational level would have altered the outcome of the ALJ's decision. *See* 20 C.F.R. § 404, Subpt.P., App. 2, Table 2, Rules 202.16, 202.17 (an individual of plaintiff's age who is limited to unskilled light work is not disabled whether he is regarded as illiterate or having a limited education).

### CONCLUSION

For the reasons set forth above, the Court finds there was substantial evidence to support the ALJ's findings and conclusions. Therefore, IT IS **ORDERED** that plaintiff's Motion for Summary Judgment be and hereby is **DENIED** and defendant's Motion for Summary Judgment be and hereby is **GRANTED.**