United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 8, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-20107

_____

KATHERINE E. HAMMOND,

Plaintiff-Appellant,

VERSUS

JO ANNE B. BARNHART,
COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
m H-02-CV-4171

_____

Before DAVIS, SMITH, and DEMOSS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Katherine Hammond appeals a summary judgment in favor of the Commissioner of Social Security denying her application for disability insurance and supplemental security income benefits. Finding no error, we affirm.

I.

Hammond applied for disability insurance benefits and supplemental security income benefits, alleging disability starting in July 1997. She claims she could not work because of

ulceritive colitis, immune deficiency disease, irritable bowel syndrome, diarrhea, weakness, nausea, stomach pain, headaches, and malapsortion; she also said she was depressed. The Commissioner denied the claim.

Hammond obtained a hearing before an administrative law judge (the "ALJ") in July 1999. She appeared *pro se*. The ALJ denied Hammond's request for benefits, finding that although she suffered from irritable bowel syndrome and major depression, neither impairment was sufficiently severe to qualify as a severe disability within the meaning of the Social Security Act (the "Act"). Hammond then filed a *pro se* request for review by the Appeals Council, which denied the request, whereupon Hammond retained counsel and urged the Appeals Council to reconsider,[1] which was denied.

Hammond sued, and both sides moved for summary judgment. The magistrate judge, sitting as the district court by consent, granted the Commissioner's motion and denied Hammond's, holding that the ALJ had not legally erred and that substantial evidence supported the finding that Hammond was not disabled.

Hammond appeals on three grounds. First, she argues that the ALJ abrogated his heightened duty to develop the facts in light of Hammond's *pro se* status.[2] Second, Hammond contends that (1) the record lacks substantial support for the ALJ's finding that Hammond's depression was not severe and (2) the severity was determined without considering the opinions of two state agency psychological consultants. Finally, Hammond argues that the Appeals Council erred in failing to remand the case to consider sixty pages of new medical records not introduced at the administrative hearing.

II.

The Commissioner conducts a five-step sequential analysis in evaluating a disability claim, *see Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994), and determines (1) whether the claimant is presently working; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other substantial gainful activity, *see id.* A finding that a claimant is not disabled at any point in the five-step process terminates the inquiry. *See Crouchet v. Sullivan*, 885 F.2d 202, 206 (5th Cir. 1989).[3] Title 42 U.S.C. § 423(d)(1)(A) defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determina-

---

[1] Hammond urged the Appeals Council to reconsider because, she argued, the ALJ's decision was not supported by substantial evidence, the ALJ applied incorrect legal standards, and new evidence not introduced at the hearing established the severity of her depression. She also asserted the ALJ's finding that her irritable bowel syndrome was not severe lacked support in the record.

[2] Hammond appeared *pro se* for a portion of the proceedings.

[3] On the first four steps of the analysis, the claimant bears the burden of showing he is disabled. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). On the fifth, the Commissioner must show that there is other, substantial work in the national economy that the claimant can perform. *See id.*

ble physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."

The ALJ determined that Hammond was not disabled at the second step of the analysis, finding that her impairment was not severe. "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal quotations and citations omitted).

Our review is limited to determining whether there is substantial evidence in the record supporting the Commissioner's decision to deny benefits and whether the Commissioner applied proper legal standards in doing so.[4] Substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992)).

We may not reweigh the record evidence, try the issues *de novo*, or substitute our judgment for that of the Commissioner. *See Johnson*, 864 F.2d at 343. If, under these criteria, substantial evidence supports such findings, they are conclusive. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.
Hammond claims that, because she was appearing *pro se*, the ALJ had a heightened duty to develop facts regarding the severity of her impairment at the administrative hearing. We do not consider this issue, because Hammond raises it for the first time on this appeal. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999).

### IV.
Hammond attacks the factual sufficiency of the record the Commissioner relied on in denying benefits. Hammond argues that (1) the Commissioner reached her decision without sufficiently considering the opinions of two state agency psychological consultants and (2) the record lacks substantial evidence in support of the Commissioner's finding.

### A.
The record contains a Psychiatric Review Technique form completed by a state agency psychological consultant, A. Boulos, M.D., and affirmed by another, Mehdi Sharihan, M.D.[5] Hammond argues that the law requires the ALJ to consider carefully all medical opinions, both from sources who have treated or examined the claimant and for nonexamining sources such as medical professionals affiliated with the disability program. She contends that the ALJ failed to consider these doctors' opinions in the manner 20 C.F.R. § 404.1527(f)(2) requires.[6]

---

[4] See *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1998).

[5] The record contains several different spellings of the name of the person we refer to as Sharihan.

[6] That regulation requires that "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other pro-

We have three observations regarding Hammond's argument. First, although there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings, § 404.1527(f)(2) does require that the ALJ articulate the weight given to experts in the positions of Boulos and Sharihan. The ALJ therefore erred in failing to provide such an explanation.[7] Our second and third observations, however, explain why we consider the error harmless.[8]

Either the evidence in Boulos's and Sharihan's reports supports and confirms the ALJ's finding, or it does not. We consider both possibilities. Our second observation is that, even though the ALJ erred in failing explicitly to weigh the relevant evidence, the opinions expressed by Boulos and Sharihan seem to confirm those of the other medical experts.

Under this reading of the record, the error would obviously be harmless. When rating the severity of Hammond's impairment, Boulos indicated that Hammond's mental disorder only slightly limited her daily activities, including the range of her social interactions.

He concluded in his final "Functional Capacity Assessment" that she retained the ability to understand and follow simple instructions, to interact adequately with coworkers and supervisors, and to adapt to routine working environments.[9]

Our third observation is that if, in the alternative, one believed the forms filled out by Boulos and affirmed by Sharihan undermined the ALJ's finding of insufficient severity, they would not do so to the degree necessary for us to overturn the ALJ's determination on substantial evidence review. The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision. In ruling on the severity of Hammond's condition, he likely made the same fact-based judgments that form the basis of our refusal to overturn his decision on substantial evidence review.[10] We discuss this evidence more thoroughly in the subsequent subsection.

gram physician or psychologist . . . ." 20 C.F.R. § 404.1527(f)(2)(ii).

[7] The district court's holding that the ALJ need not furnish such an explanation is therefore overruled, but this decision does not affect the outcome, as we explain.

[8] The harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

[9] There is evidence that Boulos did not consider Hammond's conditions particularly severe. In the "Rating of Impairment Severity" section, Boulous found that no functional limitations met the degree of impairment necessary to satisfy the Listings (of disorders). The medical form indicates that, for an impairment to satisfy the Listings, it must be marked, extreme, constant, or continual. In other words, although the form indicates that Hammond "often" suffered deficiencies of concentration, that level of severity is less than a "frequent" limitation, the degree that appears to be necessary to qualify Hammond's impairment as "severe" under the relevant legal and medical criteria.

[10] Procedural errors constitute bases for remand only where they cast into doubt the existence of substantial evidence to support the ALJ's decision. *See Morris*, 864 F.2d at 335.

4

## B.

Hammond contends that there is no record evidence supporting the finding that her impairments of irritable bowel syndrome and depression are not severe. Again, in *Stone*, 752 F.2d at 1101, we stated that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."

Having reviewed Hammond's psychiatric record, Ashok Khushalani, a psychiatrist, testified before the ALJ:

[T]here's not much of a history of psychiatric treatment in the record. The only reference to a [sic] depression is in a psychiatric consultative report done by Dr. Gunnell [sic] in April of 1999. That makes reference to her being diagnosed in the past with depression, and having been treated with certain anti-depressants. Other than that, there's no record of any ongoing treatment, except that she's on Paxil, which is an anti-depressant, and that she's been stable as it relates to her depression on the Paxil. But there is no ongoing evidence of any significant symptoms of depression or that the symptoms are interfering in any kind of functioning.

Khushalani's characterization of Hammond's psychiatric treatment history is consistent with the appellate record.[11] When the ALJ asked Khu

shalani whether Hammond had "any objective work-related restrictions," he responded that such restrictions were "[n]ot evident in the record, pertaining to the mental component."

Psychiatrist Kathy Scott-Gurnell conducted a consultive psychiatric examination of Hammond in April 1998 and reported that Hammond had left her job because of stress and crying spells, that her concentration was poor, that she was isolative, that she had feelings of hopelessness, that she occasionally had suicidal ideation, that she had good and bad days, and that she had an anxiety attack in 1997. Scott-Gurnell nonetheless determined that when Hammond's colitis was not active, she could perform all activities of daily living. Based on this examination, Scott-Gurnell concluded that Hammond's insight and judgment were good but that her concentration was impaired.[12] Although Scott-Gurnell assigned Hammond a Global Assessment of Functioning ("GAF") score of 40 (a score that could be consistent with a severe impairment), the ALJ determined that Hammond's specific impairments were not severe.[13]

---

[11] The first appearance of depression in the record is a treatment note from Dr. D.T. Shah in March 1995, stating that Hammond was taking Effexor, a common antidepressant. The next treatment notes are from a visit Hammond made to the

Fort Bend Family Health Clinic in February 1998, where she reported that she had been depressed for six years and had previously, but was no longer, taking Zoloft. She also reported chest tightness and shortness of breath, conditions that may have been anxiety-induced. Hammond was referred to social services for anxiety, depression and panic attacks, and she was placed on the antidepressant Trazodone.

[12] Scott-Gurnell noted that Hammond had somatic and psychiatric conditions that were sensitive to stress and that the prognosis was "fair but good if mental illness [were] treated to remission."

[13] Specifically, the ALJ determined that Scott-Gurnell's findings were not substantiated by the

The record also contains medical records concerning Hammond's depression from Mark Stone, a general practitioner who treated Hammond in 1998 and 1999. Several treatment notes from June 1998 indicated that Hammond was responding well to her 50-milligram dosage of Zoloft. Notes from July 1998 indicated that Stone granted Hammond's request to increase her dosage to 100 milligrams per day. Over the course of the next several months, Hammond was tapered off Zoloft and began taking ten milligram doses of Paxil. In February 1999, the treatment notes described Hammond as doing "fairly well." Her dosage was eventually increased to 20 milligrams, but her condition remained good.

Based on this evidence, the ALJ noted that Scott-Gurnell had diagnosed Hammond with major depressive disorder but that she remained capable of performing daily functions when her colitis was not active. Based on Khushalani's testimony, the ALJ ruled that Hammond's impairments did not qualify as severe, in spite of a specific finding that she indeed suffered from major depressive disorder.[14] In a psychiatric review technique form appended to his decision, the ALJ determined that Hammond had no restrictions on daily living, no difficulties in maintaining social functioning, never had deficiencies of concentration, persistence, or pace, and never had an episode of deterioration or decompensation in a work-like setting.

The ALJ did not explicitly mention Scott-Gurnell's determination that Hammond's concentration was impaired, that she had left her last job because of a crying spell, that she had a GAF score of 40, or that her prognosis was only fair unless her depression was adequately treated. As we have said, the ALJ also omitted discussion of Boulos's opinions, opinions that Sharihan affirmed.

Our status as an appellate court precludes us from reviewing the record *de novo*, and there is some evidence that points to a conclusion that differs from that adopted by the ALJ. We nonetheless decline to reverse the ALJ because there is far more than a scintilla of evidence in the record that could justify his finding that Hammond's impairments were not severe disabilities within the meaning of the Act.[15]

V.

Hammond contends that the Appeals Council erred by failing to consider sixty pages of new medical records pertaining to treatment that occurred after the administrative hearing. The introduction of new evidence justifies remand only where it is material and there is good cause for the petitioner's failure to incorporate such evidence into the record of a prior proceeding. 42 U.S.C. § 405(g). We consider new evidence to be material if there is

---

additional evidence of record, that even where other treating sources referenced Hammond's medication they did not classify her impairment as severe, and that Hammond had worked in spite of her condition for six years.

[14] The word "major" in "major depressive disorder" is a medical term and does not, in and of itself, require us to consider the disorder "severe" within the meaning of the law.

[15] Hammond devotes little discussion to her colitis claim in her original and reply briefs. The record on this question, apparently consisting in part of a report filled out by Dr. Moise D. Levy, indicates that Hammond's allegations of colitis were "credible but not severe." Given the absence of argumentation on this issue, we will not overturn the ALJ's finding on substantial evidence review.

a reasonable probability that, if it had been presented to the Commissioner, it would have changed the outcome. *See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). The evidence must "relate to the time period for which the benefits were denied, and . . . not concern evidence of a later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

Hammond seeks to submit medical records that relate almost exclusively to her post-hearing health and treatment[16] and that do not speak to the severity of her depression within the meaning of the Act.[17] It is not probable that the ALJ would have decided the matter differently if presented with the additional records. Accordingly, the Appeals Council did not err in refusing to consider them.

AFFIRMED.

---

[16] The district court's review of the record shows that 33 of the 42 pieces of evidence Hammond seeks to submit post-dated the ALJ's decision, issued on August 26, 1999.

[17] All of the resubmitted evidence is cumulative, and none of it speaks to the severity of the impairment within the meaning of the Act. We cannot say there is a reasonable probability that it would have changed the Commissioner's decision.